UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: : | |
| ROBERT PAUL ASKEN and : | Case No. 05-20092REF |
| DEBRA JEAN ASKEN, : | Chapter 13 |
| Debtors : | |

## MEMORANDUM OPINION SUPPLEMENTING AND SUPPORTING BENCH AND WRITTEN ORDERS DATED MARCH 8, 2007, GRANTING THE CHAPTER 13 TRUSTEE'S MOTION TO DISMISS WITH PREJUDICE

### I.  BACKGROUND

The Chapter 13 Trustee moved to dismiss Debtors' Chapter 13 case because, among other reasons, the Chapter 13 Plans proposed by Debtors were and are not feasible. The Trustee requested that the dismissal be with prejudice because of Debtors' prior two bankruptcies.  Debtors amended their proposed plan twice, but neither amended plan cured the feasibility problems raised by the Chapter 13 Trustee in his Motion to Dismiss with Prejudice.  In addition, the United States of America Department of Agriculture, Rural Housing Service ("USDA") filed several Objections to confirmation of Debtors' various Chapter 13 Plans.[1]  The latest Objection maintains that Debtors'

---

[1]The USDA also filed several Motions to Dismiss this case with Prejudice.  The most recent of these Motions was filed on August 19, 2005.  The USDA Motion was listed for hearing several times, but the hearings had been continued.  On February 26, 2007, however, the USDA filed a Praecipe to re-list its Motion To Dismiss for hearing, and the Motion was scheduled for a hearing to be held on March 29, 2007.  Because I had granted the Chapter 13 Trustee's Motion To Dismiss on March 8, 2007, the March 29, 2007 hearing on the USDA Motion To Dismiss

Second Amended Plan is not feasible, and is therefore not confirmable, because it proposes to pay the secured portion of the USDA's claim through a hoped-for refinancing of Debtors' home within 15 months. In the meantime, Debtors would make no payments to the USDA under their Second Amended Plan, no payments for insurance to protect the USDA's collateral, and no payments to taxing authorities. Debtors have zero equity in their home.

Both the Chapter 13 Trustee's Motion to Dismiss with Prejudice and the USDA's Objection to Confirmation of Debtors' Second Amended Plan were scheduled for hearing on March 8, 2007. At the March 8, 2007 hearing, I granted the Chapter 13 Trustee's Motion to Dismiss with Prejudice and the Debtors have appealed. This Opinion and Order supplement and support my oral bench order and my written order, both made on March 8, 2007, as permitted by Local Bankruptcy Rule 8001-1(b).[2]

---

was cancelled as moot.

    [2]Local Rule 8001-1(b) provides:
        (b) *Opinion in Support of Order.* The bankruptcy judge whose order is the subject of an appeal may, within 15 days of the filing of the notice of appeal, file a written opinion in support of the order or a written supplemental opinion that amplifies any earlier written opinion or recorded oral bench ruling or opinion.
L.B.R. 8001-1(b) (2005).
    The Source note for L.B.R. 8001-1(b) provides: "This rule is derived from L.A.R. 3.1 of the Third Circuit's Local Rules. Under subdivision (b) of this rule, a bankruptcy judge has the same opportunity as a district judge to file an opinion after an appeal has been taken."

## II.  PROCEDURAL BACKGROUND

A.  Debtors' Prior Bankruptcies

This case was Debtors' third bankruptcy filing in under two years according to the CM/ECF system.  Debtors filed their first Chapter 13 petition on February 6, 2003 (No. 03-20608).  The first case was dismissed on Debtors' voluntary motion on April 12, 2004, and Debtors filed their second Chapter 13 case that same day, April 12, 2004 (No. 04-21989).  Their second case was dismissed on October 28, 2004, when this Court granted the Chapter 13 Trustee's motion to dismiss.  The present case, the third case filed since 2003, was filed a bit over two months later, on January 6, 2005.  Throughout all three cases, Debtors have initiated and responded to numerous adversary proceedings and contested matters against the USDA.

B.  Debtors' Second Amended Plan

Under the Debtors' Second Amended Plan in this case, the USDA will receive no post-petition mortgage payments from Debtors whatsoever.  Moreover, because Debtors will not pay them, the USDA must pay for both the insurance to protect its collateral and the real estate taxes that would prime its otherwise first-priority mortgage lien.  The total debt owed to USDA, according to its uncontested claim as filed is $161,706.33, and the amount of the delinquent arrearage is $57,794.41.  The value of Debtors' home, the property that serves as collateral for the USDA loan, was litigated by

3

the parties in two days of hearings, on August 24, 2006, and September 20, 2006, and my written Order dated September 20, 2006, established the value of the property as $131,000. Subsequently, my February 12, 2007 Order granting Debtors' summary judgment motion in their cramdown adversary proceeding[3] established the secured portion of the USDA debt as $131,000, with the balance of the debt being unsecured. The USDA therefore has no adequate protection for its debt for the 15 months that Debtors would be seeking to refinance the debt on their home.

According to their Schedule I (income), Debtors have $2,449 in monthly income; according to their Schedule J (expenses), they have $1,899 in monthly expenses, leaving them $550/month to fund their Second Amended Chapter 13 Plan. Their Second Amended Plan provides for payment to the Chapter 13 Trustee of $12,650 in the first 24 months[4] followed by $550 per month for 30 months. Debtors' Second Amended Plan dictates payments to their creditors as follows:

1. Payment of all claims entitled to priority under U.S.C. Section 507;

2. Payment of $10,500 to Debtors' counsel, Eric L. Leinbach, Esquire;

3. Payment to Standing Trustee of the amount allowed;

4. Payment to USDA of $0, with the debt to be refinanced within 15 months;

5. Payment of $1,631 to Washington Township Garbage Fee & Street;

---

[3] Asken v. United States Department of Agriculture Rural Housing Service, No. 05-20092, Adv. No. 06-2192.

[4] This fund was created by the $550 monthly payments made by Debtors to the Chapter 13 Trustee for two years ($550 X 24 = $12,650).

4

    6. Payment of $2,724.76 to Northampton County Tax Claim;

    7. Payment of $1,539.69 to Pennsylvania Department of Revenue;

    8. Payment of $7,867 to Berkheimer;

    9. Payment of $2,004 to Bangor Area School District; and

    10. Pro rata payment of any remaining balance to unsecured creditors.[5]

C. The March 8, 2007 Hearing

The hearing on this matter was short. Counsel for the Chapter 13 Trustee and for the USDA offered only Debtors' schedules, plan, and other documents filed on the docket in this case, which I admitted into evidence.[6] When asked at the time of the March 8, 2007 hearing if he had any facts to present in support of confirmation of the Second Amended Plan, counsel for Debtors was utterly silent, which I interpreted to mean that he had none.[7] When asked at the hearing what law he could provide that permitted a Plan to

---

[5] Upon full payment of all amounts by Debtors and upon full payment of all priority and secured claims as set forth in the Second Amended Plan, it appears arithmetically that unsecured creditors will get Zero Dollars.

[6] At the time of the hearing, I took judicial notice of the docket entries of this case. Fed. R. Evid. 201, incorporated into these proceedings by Fed. R. Bankr. P. 9017. See Maritime Elec. Co., Inc., v. United Jersey Bank, 959 F.2d 1194, 1200 n. 3 (3d Cir. 1991). Although I may not take judicial notice *sua sponte* of facts contained in the debtor's file that are disputed, In re Augenbaugh, 125 F.2d 887 (3d Cir. 1942), I may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." Nantucket Investors II v. California Fed'l Bank, (In re Indian Palms Assoc.), 61 F.3d 197, 205 (3d Cir.1995) (citing Fed. R. Evid. 201(f) advisory committee note (1972 proposed rules)).

[7] Having listened to the CD recording of my call for the status of the list of cases to be heard on March 8, 2007, I note that 12 or 13 minutes before the actual hearing, counsel for

5

string out a secured creditor for 15 months in hope and anticipation of a 100% refinancing for debtors in bankruptcy who offered no adequate protection and no on-going payments in the meantime, counsel for Debtors was, once again, silent, which I again interpreted to mean that he had none.   Counsel for Debtors did not ask to continue the hearing or for leave to submit, at a later time, testimony, affidavits, exhibits, briefs, or other evidence or legal argument, whether oral or written.

I was therefore left with Debtors whose entire approach to paying the USDA $131,000 as the secured portion of its debt was a refinancing to occur at some time within the next fifteen months.  Furthermore, I had no evidence to support such a refinancing.  Did Debtors have any letters of commitment for the refinancing?  Did they have a lender who was at least interested in considering a refinancing?  Had they spoken to any banks about the possibility of refinancing the USDA debt?  None of these facts

---

Debtors advised me that he would present only five minutes of testimony by Debtor, Mr. Robert Asken, but that Mr. Asken was caught in traffic.  I cannot recall at this time whether I heard counsel's statement about his client's absence.  If I heard his statement about Mr. Asken's traffic problems, I concede to having forgotten it in the relatively short time before counsel was called upon to proceed with the hearing on this matter.  In any event, when the hearing actually commenced, counsel said nothing whatsoever about Mr. Asken's absence, did not ask for more time, did not ask to continue the matter to another date, and did not ask for leave to supplement the record with any further factual support or legal argument.  Mr. Asken did, the courtroom staff later told me, arrive in Court some time later, but his counsel had already left.

After the appeal had been filed and I had reviewed the sound recording of the March 8, 2007 hearing, I realized that Mr. Asken had apparently been delayed and that his counsel had decided to proceed without him.  I convened a telephone conference call on March 21, 2007, among all counsel in this matter.  I asked counsel for Debtors if his clients wanted to withdraw their appeal and request reconsideration to allow Mr. Asken to testify, which I told him I would grant. Late in the day on March 23, 2007, counsel for Debtors rejected my proposal to allow Mr. Asken to testify.

were addressed at the hearing or in any pleading and the record therefore is silent on these pertinent facts. Debtors failed to carry their burden of presenting evidence that supported the feasibility of their Plan.

### III. DISCUSSION: FEASIBILITY OF A PLAN RELYING ENTIRELY ON THE POSSIBILITY OF REFINANCING DEBT

A. Feasibility of Debtors' Plan

To secure confirmation of a plan, Debtors must prove that they can make all payments under the plan and comply with the plan. 11 U.S.C. §1325(a)(6). This is generally referred to as the feasibility requirement. "To satisfy feasibility, a debtor's plan must have a reasonable likelihood of success, i.e., that it is likely that the debtor will have the necessary resources to make all payments as directed by the plan." First National Bank of Boston v. Fantasia (In re Fantasia), 211 B.R. 420, 423 (1st Cir. BAP 1997); In re Ellis, No. 05-39345DWS, 2006 WL 1555692, at *5 (Bankr. E.D. Pa. May 16, 2006). As with all of the requirements for confirmation under Section 1325, the burden is on the debtor to establish that the plan is feasible. When a debtor returns to the bankruptcy court for a third time to attempt to confirm a plan, the burden is heightened. In re Newton, 217 B.R. 1002, 1003 (Bankr. S.D. Ohio 1997); Ellis, 2006 WL 1555692, at *5. See In re Patton, No. 06-11590, slip op. at 11-12 (Bankr. E.D. Pa., March 17, 2007)(Sigmund, C.J.).

B.  Dismissal of Debtors' Chapter 13 Case

The Chapter 13 Trustee moved for dismissal of this case because, among other reasons, Debtor's Second Amended Plan was not feasible.  The Chapter 13 Trustee requested dismissal with prejudice because Debtors are serial, repetitive filers, having filed three bankruptcy petitions in less than two years, and thereby having caused unreasonable delay that (1) is prejudicial to their creditors generally and to USDA in particular and (2) evidences their bad faith.  In addition, the USDA had filed an Objection to Debtors' Second Amended Plan based upon its lack of feasibility.  On request of a party in interest, a court shall dismiss a Chapter 13 case "for cause," which includes unreasonable delay that is prejudicial to creditors, and also includes denial of confirmation of a plan and a request for additional time for filing another plan.  11 U.S. C. §1307(c)(1) and (3) (both of which subsections are implicated here).

Debtors provided me with no factual support for their proposed refinancing.  Is it likely that they will close a 100% refinancing that must refinance debt equal to the value of the property?  Is it even possible that they might be able to obtain such refinancing?   My consideration of the wished for refinancing was coupled, of course, with Debtors' failure and inability to provide any adequate protection whatsoever.  While waiting for their refinancing over the next 15 months, Debtors will make no post-petition mortgage payments, will pay no insurance, and will pay no local real estate taxes (which will prime the USDA lien).  With no evidence whatsoever to support the reasonableness or feasibility of the hoped for refinancing, Debtors' proposed Second Amended Plan is

totally speculative and confirmation should be denied.  Newton, 217 B.R. at 1004.

With their excess income over expenses of only $550 and with the tremendous arrearage that Debtors have allowed to grow, a realistic view of their resources shows that they simply cannot fund any plan that could provide for the arrearage owed to the USDA[8] as well as all other secured and priority debt.  The Chapter 13 Trustee's Motion To Dismiss should be granted and this case should be dismissed for Debtors inability to present any feasible plan.  In re Patton, Bankr. No. 06-11590 slip op. at 13 (Bankr. E.D. Pa. March 16, 2007); Ellis, 2006 WL 1555692, at *3, 5-6; In re LeGree, 285 B.R. 615, 619-21 (Bankr. E.D. Pa. 2002); In re Barr, 263 B.R. 496, 498 (Bankr. E.D. Pa. 2001).  As Chief Judge Sigmund of this District wrote in Ellis:

> As I find this Chapter 13 Plan unconfirmable and for the foregoing reasons find Debtor unable to propose a feasible plan, any further attempts to file a plan are not permitted.  This is especially appropriate where Debtor is a serial filer who has had almost two years to come up with a confirmable plan.

Ellis, 2006 WL 1555692, at *5.  Just as in Ellis, this is Debtors' third attempt in

---

[8] Approximately $27,000 of the crammed down debt of $131,000 arises from Debtors' previous, long-standing delinquencies in making their payments to USDA.

bankruptcy; and also just as in Ellis, Debtors here took two years to finally present this non-feasible, unconfirmable plan.

C.  Dismissal with Prejudice Because of Repetitive Filings

Moreover, in addition to being unable to propose a feasible, confirmable plan in this case, I note that Debtors have a history of repetitively filing bankruptcy to avoid paying the debt owed to their lender, the USDA, causing unreasonable delay that is prejudicial to the USDA and Debtors' other creditors.  Also, Debtors' presentation of a plan that (1) is so terribly speculative and (2) leaves USDA with no adequate assurance that its position will not significantly deteriorate is further evidence of Debtors' bad faith. Unfortunately, Debtors' income is insufficient to pay USDA any portion of its debt and, as such, cannot support a feasible plan.  As a result, I find that Debtors filed this bankruptcy petition in bad faith.  I therefore granted the Chapter 13 Trustee's request that this case be dismissed with prejudice and that Debtors must obtain written leave of this Court before they may file a fourth bankruptcy petition.[9]  In re Jacono, No. 06-13912DWS, 2006 WL 3861093, at *4 (Bankr. E.D. Pa. Nov. 30, 2006); In re Dami, 172 B.R. 6, 10 (Bankr. E.D. Pa. 1994).

---

[9]"[D]ebtors are barred from filing another bankruptcy petition, individually or jointly, without prior leave of court."  (Order dated March 8, 2007.)

## IV.  CONCLUSION

For the reasons stated above and for the reasons stated in open Court at the March 8, 2007 hearing on (1) the Chapter 13 Trustee's Motion to Dismiss with Prejudice and (2) the confirmation of Debtors' Second Amended Plan, my bench order dismissing Debtors' case with prejudice on March 8, 2007, and the written order signed that day are hereby affirmed and endorsed and this Opinion supplements and supports them without the need for any further order.

**Date: April 3, 2007**              BY THE COURT

 

_____
Richard E. Fehling
United States Bankruptcy Judge